Noah E. and Marjorie M. Smith v. Commissioner.
Smith v. Commissioner
Docket No. 1325-71.
United States Tax Court
T.C. Memo 1972-147; 1972 Tax Ct. Memo LEXIS 110; 31 T.C.M. (CCH) 736; T.C.M. (RIA) 72147; July 5, 1972
Noah Smith, pro se, 609 Lexington Way, Burlingame, Calif., David L. Gibson, for the respondent. FORRESTER
*111 Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent determined a deficiency in petitioners' income tax for the taxable year 1968 in the amount of $1,603.25. The issues remaining for decision are whether petitioners qualify for the combat pay exclusion of section 112, [1] and whether petitioners have adequately substantiated certain claimed travel expense deductions. Adjustment of a claimed medical expense deduction is dependent on our resolution of the above issues. Findings of Fact Some of the facts have been stipulated and are so found. Petitioners resided in Burlingame, California, at the time the petition herein was filed. They filed a joint Federal income tax return for the taxable year 1968 with the district director of internal revenue in San Francisco, California. The issues in this case relate solely to the activities of Noah E. Smith, and he will hereinafter be referred to as the petitioner. Throughout 1968 petitioner was a civilian noncombat airline navigator employed by Flying Tiger Line, Inc., Los Angeles, California (hereinafter referred to *112 as Flying Tiger). Flying Tiger operated the following three types of flights under military contract with the Department of Defense: (1) transportation of military cargo to Vietnam (some of which was explosive); (2) transportation of military personnel on leave from Vietnam for "rest and recreation;" and (3) transportation of military personnel between the United States and Vietnam. Flying Tiger was a member of the Civil Reserve Air Fleet program, and its aircraft and crews were consequently subject to immediate mobilization in the event of a national emergency. In 1968 Flying Tiger did not operate regularly scheduled commercial flights. During 1968 petitioner navigated Flying Tiger aircraft to and from the following airfields: Travis Air Force Base, California; Anchorage or Cold Bay, Alaska; Yokota Air Force Base, Japan; and Saigon, Danang, Camrahn Bay, Bien Hoa, and Phu Cat, all in Vietnam. Petitioner flew on flights from California to the Far East on approximately 23 separate occasions during 1968, including at least one flight each month. Each of such flights involved a two or three-hour stopover in Vietnam for loading and unloading. On several occasions the aircraft navigated *113 by petitioner came under small arms fire while flying over Vietnam. Prior to each flight to Vietnam, petitioner and other members of the crew were cleared for security and given military briefings. Each member of the crew carried an identification card which identified the bearer as a civilian noncombatant entitled to treatment equivalent to that accorded a "Captain, U.S. Army." These cards were to be used in the event of capture by hostile forces. Due to the limited scheduling and areas flown by Flying Tiger, petitioner was forced to either accept flight assignments to Vietnam or give up his job. On April 1, 1969, petitioner received a Certificate of Recognition and Appreciation from General Howell M. Estes, Jr., United States Air Force, for services rendered as a navigator on flights to and from Vietnam over the period from August 5, 1964, to December 15, 1968. At no time during 1968 was petitioner a member of any active or reserve unit of the United States Armed Forces. Also, petitioner at no time during 1968 wore a military uniform or received compensation for service as a commissioned officer or enlisted man of the Armed Forces. Petitioner's entire salary during 1968 was paid *114 by Flying Tiger. During 1968 petitioner was away from home on assignment with Flying Tiger for 142 days, and he received reimbursement for his travel expenses in the amount of $1,874, for a daily rate of approximately $13.20. Of the $13.20 daily expense allowance, Flying Tiger retained $6 and paid petitioner's hotel bill, absorbing any lodging expense exceeding $6. Thus petitioner received only $1022 for meals and other travel expenses for the 142 days, but Flying Tiger furnished its crews with cold meals during most flights. 738 Due to his irregular schedule and the changes in time zones, petitioner's eating habits varied greatly while he was out on a flight. On some days he would eat only one meal, and on others he would eat three or four meals. On his federal income tax return for 1968 petitioner claimed an exclusion of $6,000 from his income as "combat pay" within the meaning of section 112. Also, petitioner deducted $864 which he claimed represented his out-of-pocket travel expenses incurred during 1968 in excess of the per diem travel allowance paid by Flying Tiger. Respondent disallowed both items and determined a deficiency accordingly. The only record which petitioner *115 introduced to substantiate his claimed travel expenses in excess of reimbursement was a log book which he kept during 1968. The purpose of keeping the log book was to record for each flight such information as the time of departure, the trip number, the time of arrival, and the total block time. The log book contained four notations which indicate that petitioner made the following meal expenditures: on January 26, 1968, $13.45 for food in Anchorage, Alaska; on March 16, 1968, $6.75 for food in Anchorage, Alaska; on one day in September 1968, $13.20 for food in Tokyo, Japan; and on one day in August 1968, $8.60 for food in Japan. The only other substantiation offered by petitioner to support his claimed deduction for travel expenses was (1) a pair of menus from a hotel in Anchorage, Alaska, which he obtained in 1970, and (2) some receipts from Japanese restaurants which indicated meal expenditures on four different days in 1970 of $8.60, $6.00, $8.00, and $9.00. Opinion Petitioner's first claim arises under section 112 [2] which permits, within certain limits, members of the Armed Forces of the United States to exclude "combat pay" from gross income. Respondent contends that petitioner *116 was not a member of the armed forces during 1968, and that he therefore cannot be allowed the section 112 exclusion. We must agree with respondent, because it is abundantly clear from the statute, the Income Tax Regulations, and the cases [3] that the benefits of section 112 are available only to actual members of the armed forces. Petitioner, by his own admission, was not a member of the armed forces during 1968, but was a civilian employee of a civilian airline. *117 Petitioner argues that when Congress enacted section 112 it must have overlooked the plight of civilian employees like himself who work in combat areas. This is highly unlikely, especially since Congress recently extended the coverage of section 112 to include certain civilian employees while they are in a "missing status" during the Vietnam conflict. Sec. 112(d)(2). In any event, we are not the forum to which such an argument should be addressed. We can only apply the law as we find it; we cannot change the law no matter how worthy petitioner's arguments might be. Only Congress can alter the statute and afford petitioner the redress he seeks. Petitioner's second claim arises from the money which he purportedly spent in excess of the amounts he received from Flying Tiger as reimbursement for travel expenses. In 1968 petitioner received a net of $1022 to reimburse him for the travel expenses exclusive of lodging which he incurred during the 142 days he was away from home on assignment with Flying Tiger. He contends that this amount was inadequate, and that during 1968 he had to spend an additional $864 for which he is entitled to a deduction. 739 Before a taxpayer may deduct *118 travel expenses, section 274(d) [4] requires that he substantiate with adequate records or sufficient evidence corroborating his own statement (1) the amount of the expense, and (2) the time and place it was incurred. Respondent disallowed petitioner's claimed deduction on the ground that petitioner did not adequately substantiate the number of meals and the amount expended. We agree with respondent and hold that petitioner is not entitled to the claimed deduction. The only records offered by petitioner were four somewhat ambiguous notations in a log book which he kept during 1968. These notations pertain to only four of the 142 days which petitioner spent on flights, and they could not possibly satisfy petitioner's burden of proving that his *119 meal expenses exceeded his daily reimbursement. These notations seem to have been made on special occasions when petitioner spent more than usual on food. One of the notations indicates that petitioner spent less than his per diem allowance on that day. The extent to which petitioner partook of the box lunches provided by Flying Tiger is not entirely clear from the record. Moreover, petitioner testified that his eating habits varied because of his irregular hours and travel across time zones. Because of these factors there may well have been days when petitioner ate fewer meals than he otherwise would have. Finally, petitioner did not explain how he computed the amount ($864) which he seeks to deduct. In sum, the evidence introduced by petitioner simply does not substantiate that he spent the amounts claimed. The law, as duly enacted by Congress, requires such substantiation, and we must sustain respondent's disallowance. As a consequence of all of the foregoing, respondent's determination as to the claimed medical expense deduction is also sustained. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.↩
2. SEC. 112. CERTAIN COMBAT PAY OF MEMBERS OF THE ARMED FORCES. (a) Enlisted Personnel - Gross income does not include compensation received for active service as a member below the grade of commissioned officer in the Armed Forces of the United States for any month during any part of which such member - (1) served in a combat zone during an induction period, or (2) was hospitalized as a result of wounds, disease, or injury incurred while serving in a combat zone during an induction period * * * (b) Commissioned Officers. - Gross income does not include so much of the compensation as does not exceed $500 received for active service as a commissioned officer in the Armed Forces of the United States for any month during any part of which such officer - (1) served in a combat zone during an induction period, or (2) was hospitalized as a result of wounds, disease, or injury incurred while serving in a combat zone during an induction period * * * ↩
3. For almost identical cases see Jay D. Reynolds, T.C. Memo. 1972-84; David D. Fagerland, T.C. Memo. 1971-134; and Lee M. Prusia, T.C. Memo. 1969-148↩.
4. SEC. 274. DISALLOWANCE OF CERTAIN * * * EXPENSES. * * * (b) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, * * *↩